

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

*Overruled by*
*V-665*
*where conflicts*

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-6529

Re: Is a common-carrier motor carrier doing a wholly interstate transportation business, required to pay the use tax levied under Article VI, House Bill 8, Acts 47th Legislature, 1941, Chapter 184, page 269, on motor vehicles purchased by it in a foreign state and used exclusively in interstate commerce?

In your letter of April 13, 1945, you request this department to advise whether or not the Southwestern Freight Lines is required to pay the tax levied under Article 7047k, V.A.C.S., under the following facts submitted:

Southwestern Freight Lines, a California corporation, operates under an interstate permit issued by the Interstate Commerce Commission as an interstate common carrier motor carrier of property between Los Angeles, California, and El Paso, Texas. The general offices of the company are located in the State of Arizona but it maintains terminal facilities in El Paso, Texas, for the sole purpose of unloading and reloading freight or property carried in interstate commerce. None of the officers or agents of the corporation reside in Texas, save and except a local agent who resides in El Paso for the sole purpose of administration of its business at its terminal there. Southwestern Freight Lines does no intrastate business in Texas, nor does it have a permit or certificate of convenience and necessity from the Railroad Commission of Texas to do so. During the latter part of 1944, Southwestern Freight Lines purchased several new pieces of motor vehicle equipment in Arizona and paid thereon the Arizona sales tax which was a higher sales tax than the 1% authorized to be levied under the provisions of House Bill 8, Acts 47th Legislature, 1941, Chapter 184, page 269, (Art. 7047k, V.A.C.S.).

Honorable George H. Sheppard, page 2

The pertinent sections of the statute are as follows:

"Section 1. (a) There is hereby levied a tax upon every retail sale of every motor vehicle sold in this State, such tax to be equal to one (1) per cent of the total consideration paid or to be paid to the seller by the buyer, which consideration shall include the amount paid or to be paid for said motor vehicle and all accessories attached thereto at the time of the sale, whether such consideration be in the nature of cash, credit, or exchange of other property, or a combination of these. In the event the consideration received by the seller includes any tax imposed by the Federal Government, then such Federal tax shall be deducted from such consideration for the purpose of computing the amount of tax levied by this Article upon such retail sale.

". . . .

"Sec. 2. There is hereby levied a use tax upon every motor vehicle purchased at retail sale outside of this State and brought into this State for use upon the public highways thereof by a resident of this State or by firms or corporations domiciled or doing business in this State. Such tax shall be equal to one (1) per cent of the total consideration paid or to be paid for said vehicle at said retail sale. The tax shall be the obligation of and be paid by the person, firm, or corporation operating said motor vehicle upon the public highways of this State.

". . . .

"Sec. 5. The taxes levied in this Article shall be collected by the Assessor and Collector of Taxes of the county in which any such motor vehicle is first registered or first transferred after such a sale; the Tax Collector shall refuse to accept for registration or for transfer any motor vehicle until the tax thereon is paid.

Honorable George H. Sheppard, page 3

"When a tax becomes due on a motor vehicle purchased outside of this State and brought into this State for use upon the highways, the person, firm, or corporation operating said motor vehicle upon the public highways of this State shall pay the tax imposed by Section 2 to the Tax Collector of the county in which such motor vehicle is to be registered. The tax shall be paid at the time application is made for registration of said motor vehicle, and the Tax Collector shall refuse to issue the registration license until the tax is paid.

". . .." (Emphasis ours)

The tax as levied is a sales tax, except that for the purpose of preventing purchases by residents of Texas of motor vehicles and equipment in other States to avoid the payment of the sales tax, section 2 of the Bill, supra, places a use tax upon every motor vehicle purchased by retail outside of the State and brought into the State for use upon its public highways by a resident of this State or by firms or corporations domiciled or doing business in this State.

This department in its Opinion No. O-3739, approved August 29, 1941, has construed Article 7047k, V.A.C.S., in connection with the meaning of the words, "sales" and "use" taxes as follows:

"Use and other compensating taxes are frequently enacted along with retail sales taxes in supplementary or complementary thereto. Aside from their obvious revenue producing object they are also designed to prevent sales tax avoidance through outside purchases, and to place local business on even terms with interstate commerce and prevent discrimination against local merchants in favor of competitive merchants in other states. Pacific Telephone & Telegraph Company v. Henneford, (Sup. Ct. Wash. 1936), 81 Pac. (2d) 786, 790; Continental Supply Company v. People, (Sup. Ct. Wyo, 1939) 88 Pac. (2d) 488, 490; Fifteenth Street Investment Company v. People, (Sup. Ct. Colo. 1936) 81 Pac. (2d) 764, 766; Henneford v. Silas Mason Co., Inc., 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814.

Honorable George H. Sheppard, page 4

It would seem to be apparent from the statute it-
self that the use tax levied by House Bill 8 is
closely related to the retail sales tax on motor
vehicles and has for its purposes those considera-
tions herein above pointed out."

It will be noted in connection with Section 2 of the
Act that the "use" tax is levied upon "a resident of this
State or by firms or corporations domiciled or doing business
in this State." Southwestern Freight Lines is not a resident
of this State, being incorporated under the laws of California,
nor is it domiciled in this State, because it has its prin-
cipal office and place of business in the State of Arizona.
None of its officers are domiciled in this State or are res-
idents of this State; therefore, the only classification under
which Southwestern Freight Lines would be required to pay the
tax in question would be as a corporation doing business in
Texas, which resolves the query as to the nature of its busi-
ness in Texas, if any.

Under the facts as shown the corporation is engaged
solely in interstate commerce and does not do any intrastate
business. As such, it falls within the rule of law laid down
by the Supreme Court of the United States in the case of
Bingaman, Commissioner, v. Golden Eagle Western Lines, Inc.,
297 U. S. 626, 56 S. Ct. 624, 80 L. Ed. 928, in which case
the facts were as follows: A corporation organized under
the laws of Delaware was a common carrier operating a line
of busses over the public highways of several states, includ-
ing New Mexico, its business being limited to interstate
transportation. It did no business in New Mexico, and espec-
ially disclaimed any intention of doing any such business in
the future. Its busses were propelled by gasoline purchased
in another state, placed in tanks attached to the busses and
transported and used exclusively in interstate commerce. A
New Mexico statute imposed an excise tax of 5¢ a gallon upon
the sale and use of all gasoline and motor fuel and the con-
tention was made by the State Tax Commissioner of New Mexico
that the corporation was subject to the excise tax. Justice
Sutherland, speaking for the Court, held as follows:

"The case turns upon the question whether
the pertinent statutory provisions exact a charge
as compensation to the state for the use of its
highways, or impose an excise tax for the use of

Honorable George H. Sheppard, page 5

an instrumentality of interstate commerce. If the former, the tax should be sustained; if the latter, it clearly contravenes the commerce clause and must be held bad. Helson and Randolph v. Kentucky, 279 U. S. 245, 49 S. Ct. 279, 73 L. Ed. 683, and cases cited."

See also the case of Northern Pacific Railway Company v. Henneford, 15 Fed. Supp. 302 (decided by a 3-judge court) and which was reversed by the United States Supreme Court in 303 U. S. 17, 58 S. Ct. 415, on account of lack of jurisdictional amount, wherein the court thoroughly compares the case of Bingaman v. Golden Eagle Western Lines, as well as other companion cases, at pages 305 to 311.

Unquestionably the tax as levied above is an excise tax on instrumentalities used wholly in interstate commerce, and in view of the foregoing rule of law as applied to Southwestern Freight Lines, would be unconstitutional and invalid as an undue burden on interstate commerce in violation of Article I, Section 8, Clause 3, and the Fourteenth Amendment of the Constitution of the United States.

The tax as applied to Southwestern Freight Lines could not be sustained as a privilege tax or occupation tax to the State of Texas for the use and policing of the State highways for the reason that neither the caption of House Bill 8, nor the body of the Bill itself, specifically refer to the tax levied as being in such connection, and further under Article XX of House Bill 8 the revenue derived and collected under Article VI is allocated one-fourth to the Available School Fund and the balance to the Clearance Fund and the other funds, none of which are allocated to the use or maintenance of the public highways of Texas. Bingaman v. Golden Eagle Western Lines, supra; McCarroll v. Dixie Greyhound Lines, Inc., 309 U. S. 176, 60 S. Ct. 480, 84 L. Ed. 683.

It is therefore the opinion of this department that the Southwestern Freight Lines are not required to pay the tax levied under Article 7047k, V.A.C.S., on the equipment so purchased and used, and that it is the duty of the Tax Assessor-Collector of El Paso County to register these vehicles in accordance with the law without the payment of the tax.

Honorable George H. Sheppard, page 6

We trust the foregoing opinion fully answers your question.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

O. K. Richards
Assistant

CKR:db

APPROVED APR 23, 1945



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN